UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| THOMAS SPOTTED BEAR,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SHERIFF KEVIN THOM, in his individual and official capacity, JAIL COMMANDER YANTIS, in his individual and official capacity, and CORRECTIONAL OFFICER SCHULZ, in his individual and official capacity,<br><br>                    Defendants. | 5:20-CV-05061-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING FOR DISMISSAL |

Plaintiff, Thomas Spotted Bear, an inmate at the Pennington County Jail[1], filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. Spotted Bear moves to proceed in forma pauperis and included his prisoner trust account report. Dockets 2, 5, 6.

## I.      Motion to Proceed Without Prepayment of Fees

Spotted Bear reports average monthly deposits of $0.00 and an average monthly balance of $0.00. Docket 2. Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C.

---

[1] Spotted Bear does not provide facts regarding the reason why he is detained at the Pennington County Jail. *See* Docket 1. The court will treat him as a pretrial detainee because he was incarcerated at a county jail and was waiting to be released on bond when he filed the present action. *See id.* at 1; Docket 5 at 1.

§ 1915(b)(1). "[W]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C. § 1915(b)(1)(A)-(B). Based on the information regarding Spotted Bear's prisoner trust account, the court grants Spotted Bear leave to proceed without prepayment of fees and waives the initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Spotted Bear must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding

2

month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Spotted Bear's institution. Spotted Bear remains responsible for the entire filing fee, as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997).

## II.     1915A Screening

### A.     Factual Background

Spotted Bear claims that on September 6, 2020, he reported to Correctional Officer Schulz that the toilet in his cell was not working. Docket 1 at 4. Schulz called a plumber to fix the toilet. *Id.* Spotted Bear was removed from his cell while the plumber worked on the toilet. *Id.* Once the toilet was fixed, Schulz sent Spotted Bear back to his cell. *Id.* As Spotted Bear walked to his cell, he claims that other inmates told him that there were human feces all over the walls and floor of his cell. *Id.* Once he reached his cell, Spotted Bear claims that Schulz ordered him to clean up the mess using Spotted Bear's own inmate clothes and water from the cell's sink. *Id.* He was only able to use a mop once that night. *Id.* Spotted Bear alleges that he asked for cleaning supplies, but he never received them. *Id.* Spotted Bear states that he was forced to sleep in his cell that night; he also claims that he had to eat in his dirty cell the next day. *Id.* After Spotted Bear was off lockdown, he was able to

clean the rest of the mess up. *Id.* Spotted Bear alleges that the mess made him nausea, and he developed rashes. *Id.* He also claims that he was humiliated and mentally distraught. *Id.*

On another day in September of 2020, Spotted Bear approached his cell and saw that Schulz was doing a random cell search. *Id.* at 5. Spotted Bear claims that Schulz was going through Spotted Bear's personal and legal mail. *Id.* Spotted Bear told Schulz that "he had no right to be doing that." *Id.* Spotted Bear alleges that Schulz replied that "[h]e could." *Id.* Schulz told Spotted Bear to step away and to let Schulz continue the search. *Id.* Spotted Bear claims that he has an ongoing legal case. *Id.* He contends that Schulz opened confidential mail and that Schulz had no reason to read his personal and legal mail. *Id.*

Lastly, Spotted Bear claims that Schulz retaliated against Spotted Bear. *Id.* at 6. Spotted Bear alleges that he is being "charge[d]" for reporting "the incident." *Id.* When Schulz informed Spotted Bear that he was being charged, Schulz allegedly shouted it loud enough for the cell block to hear. *Id.* Schulz told Spotted Bear that it was going to cost $400 for the plumber's labor and the parts for the toilet. *Id.* Spotted Bear claims that his injuries included lockdown and mental anguish. *Id.*

Spotted Bear claims that Sherriff Kevin Thom is the decision maker at the Pennington County Jail and oversees the operations at the Pennington County Jail. *Id.* at 2. Spotted Bear alleges that Yantis, the Jail Commander,

has "legal authority" and makes decisions at the Pennington County Jail. *Id.* Schulz works under Sheriff Thom and Yantis. *Id.*

**B.    Legal Standard**

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true[.]" *Twombly*, 550 U.S. at 555; *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they

5

"(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

### C.    Legal Analysis

#### 1.    Official Capacity Claims

Spotted Bear sues defendants in their individual and official capacities. Docket 1 at 2. Spotted Bear claims that Sheriff Thom, Yantis, and Schulz are employed at the Pennington County Jail. *Id.* "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, Spotted Bear's claims against Thom, Yantis, and Schulz in their official capacity are the equivalent of a lawsuit against Pennington County. And a county may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Spotted Bear does not allege that Pennington County has unconstitutional policies or customs, thus his claims against Thom, Yantis, and Schulz, in their official capacity, are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

###### 2.    Individual Capacity Claims

###### a.    Conditions of Confinement

Spotted Bear claims that the conditions of his confinement violated his Eighth Amendment rights. Docket 1 at 4. But as a pretrial detainee, Spotted Bear's claims are analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005). The Pennington County Jail officials violated Spotted Bear's due process rights if the Pennington County Jail's conditions of confinement constituted punishment. *Id.* The same deliberate-indifference standard that is applied under the Eighth Amendment to conditions-of-confinement claims applies to pretrial detainees under the Fourteenth Amendment. *Id.*

To sufficiently allege a conditions of confinement claim, Spotted Bear must assert that the alleged deprivation resulted "in the denial of the 'minimal civilized measure of life's necessities' " and that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Dalrymple v. Dooley*, No. 4:12-CV-04098-KES, 2014 WL 4987596, at *5 (D.S.D. Oct. 6, 2014). First, under the objective component, an inmate must show that a condition of confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Supreme Court has listed "food, clothing, shelter, medical care and reasonable safety" as minimal civilized

7

measures. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

Second, under the subjective component, the inmate must show that the defendant prison officials "acted with a sufficiently culpable state of mind" in relation to the prison condition. *Hudson v. McMillian*, 503 U.S. 1, 20 (1992) (Thomas, J. dissenting). A " 'should-have-known' standard[] is not sufficient to support a finding of deliberate indifference[.]" *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). A prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result." *Farmer*, 511 U.S. at 835. A prisoner need only show that the prison official knew of and disregarded "an excessive risk to inmate health or safety[.]" *Id.* at 837.

Here, Spotted Bear has alleged facts that a condition of his confinement posed an unreasonable risk of serious damage to his health. Spotted Bear claims that the toilet in his cell broke, resulting in the cell's floors and walls being covered with human feces. Docket 1 at 4. Spotted Bear was instructed to clean up the mess with only his inmate clothing and water from the cell's sink. *Id.* He was only able to use a mop once during the cleanup. *Id.* Spotted Bear was forced to sleep and eat in the dirty cell until the next day when he was able to clean up the rest of the mess. *Id.* He experienced nausea and rashes. *Id.* Additionally, Spotted Bear alleged facts that demonstrate Schulz acted with a culpable state of mind. Spotted Bear claims that Schulz knew about the dirty cell because he sent Spotted Bear back to the cell and told Spotted Bear to

8

clean it up. *Id.* Spotted Bear also asked for cleaning supplies but never received them. *Id.* Thus, Spotted Bear has alleged sufficient facts to state a claim challenging the conditions of confinement. Spotted Bear's conditions of confinement claim survives 28 U.S.C. § 1915A screening.

### b.      Legal Mail

Spotted Bear claims that defendants violated his First Amendment rights when they opened and read his legal and personal mail. Docket 1 at 5. An inmate's privileged mail "may not be opened for inspections for contraband except in the presence of the prisoner." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)); *see also Foster v. Helling*, 210 F.3d 378 (8th Cir. 2000) (allegations that prison stated that prisoner's legal mail could be opened outside of prisoner's presence stated a First Amendment claim). "[A]n 'isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.' " *Gardner*, 109 F.3d at 431 (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)).

Spotted Bear alleges that Schulz opened Spotted Bear's legal mail during a random cell search. Docket 1 at 5. Spotted Bear claims that he saw Schulz open and read his mail; thus, Schulz opened and read the legal mail in Spotted Bear's presence. *Id.* And Spotted Bear only alleges an isolated incident. *Id.* Spotted Bear does not allege an improper motive or resulting interference. Therefore, Spotted Bear has not alleged sufficient facts to state a claim

9

regarding the reading of his legal mail. Spotted Bear's First Amendment legal mail claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

### c.    Retaliation

Spotted Bear alleges that Schulz retaliated against him. Docket 1 at 6. In order for Spotted Bear to allege a First Amendment retaliation claim, he must show that: "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks,* 486 F.3d 1025, 1029 (8th Cir. 2007).

Here, Spotted Bear alleges that he engaged in a protected activity when he reported the toilet incident. Docket 1 at 6. Spotted Bear claims that Schulz took an adverse action against him by charging Spotted Bear the $400 cost to fix the toilet after/because Spotted Bear reported the toilet incident. *Id.* Thus, Spotted Bear has alleged sufficient facts to state a retaliation claim. Spotted Bear's First Amendment retaliation claim survives 28 U.S.C. § 1915A screening.

### d.    Supervisor Liability

In addition to Schulz, Spotted Bear names Thom and Yantis as defendants. Docket 1 at 2. "In the section 1983 context, supervisor liability is

10

limited. A supervisor cannot be held liable, on a theory of respondeat superior, for an employee's unconstitutional actions." *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1994). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcrof v. Iqbal*, 556 U.S. 662, 676 (2009); *see Martin*, 780 F.2d at 1338 (claim not cognizable under § 1983 where the plaintiff fails to allege the defendant was personally involved in or directly responsible for incidents that injured the plaintiff).

Spotted Bear has not indicated that Thom or Yantis were personally involved in the alleged incidents regarding the broken toilet, reading of legal mail, or retaliation. Because Spotted Bear does not assert facts that allege Thom or Yantis participated in unconstitutional conduct, his claims against Thom or Yantis are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## III.   Other Motions

Spotted Bear filed three additional motions. *See* Dockets 9, 12, 13. First, Spotted Bear requests that this court schedule a court date for his complaint. Docket 9. Second, Spotted Bear filed a motion for subpoena duces tecum regarding the video surveillance footage for the days of the alleged incidents. Docket 12. Third, Spotted Bear requests a copy of the video surveillance footage. Docket 13.

Once defendant Schulz files an answer, under Fed. R. Civ. P. 26(f), the parties will meet to discuss the nature and basis of their claims and defenses

and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1), to discuss any issues about preserving discoverable information, and to develop a proposed discovery plan. After the court receives the parties' discovery plan, the court will issue a scheduling order. Thus, Spotted Bear's motions for a hearing and video surveillance footage (Dockets 9, 12, 13) are premature and therefore are denied.

Thus, it is ORDERED:

1.    That Spotted Bear's motion to proceed in forma pauperis (Docket 5) is granted. Spotted Bear's second motion to proceed in forma pauperis (Docket 6) is denied as moot.

2.    That the institution having custody of Spotted Bear is directed that whenever the amount in Spotted Bear's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Spotted Bear's trust account shall be forwarded to the U.S. District Court Clerk's Office under to 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

3.    That all claims against defendants in their official capacities are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

4.    That Spotted Bear's conditions of confinement and retaliation claims against Schulz survive § 1915A screening.

12

5.  That all other claims asserted against defendants are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6.  That Spotted Bear's motions for a hearing and video surveillance footage (Dockets 9, 12, 13) are denied.

7.  The Clerk shall send a blank summons form and Marshal Service Form (Form USM-285) to Spotted Bear so that he may cause the complaint to be served upon defendant Schulz.

8.  Spotted Bear shall complete and send the Clerk of Courts a separate summon and USM-285 form for defendant. Upon receipt of the completed summons and USM-285 form, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

9.  The United States Marshal Service shall serve the completed summons, together with a copy of the complaint (Docket 1) and this order, upon defendant.

10. Defendant will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant fall under Fed. R. Civ. P. 12(a)(2) or (3).

11. The clerk of the court is directed to send a copy of this order to the appropriate official at Spotted Bear's institution.

13

12.    Spotted Bear will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated December 1, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE